UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

G & G CLOSED CIRCUIT EVENTS, LLC,    :

             :

         Plaintiff,   :   REPORT AND

             :   RECOMMENDATION

   -against-       :

             :   No. 23-CV-9098-AMD-JRC

ASHLEY LALMANSINGH, individually and d/b/a All :

Thingz, and ALL THINGZ LLC, an unknown business :

entity d/b/a All Thingz,      :

             :

        Defendants. :

             :

---------------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

   On December 12, 2023, plaintiff G&G Closed Circuit Events, LLC ("plaintiff" or

"G&G") filed this action against All Thingz LLC, an unknown business entity doing business as

All Thingz ("All Thingz"), as well as Ashley Lalmansingh, individually ("Lalmansingh" and

together with All Thingz, "defendants").  *See* Compl., Dkt. 1.  Plaintiff alleges that defendants, in

violation of the Federal Communications Act of 1934 (the "FCA"), 47 U.S.C. §§ 553 and 605,

unlawfully intercepted and displayed a closed-circuit television exhibition of a boxing match

held on January 7, 2023, between Gervonta Davis and Hector Luis Garcia.  *See id.* ¶¶ 12, 14, 17,

18, 24, 28, 38.  Upon plaintiff's application and in light of defendants' failure to appear in or

otherwise defend this action, the Clerk of the Court entered defendants' default on March 20,

2024.  *See* Dkt. 12.

   Currently pending before this Court, on a referral from the Honorable Ann M. Donnelly,

is plaintiff's second motion for default judgment.  *See* Mot. for Default J., Dkt. 20; Mem. in

Support ("Pl.'s Mem."), Dkt. 20-3; Order Referring Mot. dated Dec. 5, 2024.  For the reasons set forth below, this Court respectfully recommends granting plaintiff's motion.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

The following facts are drawn from plaintiff's Complaint and are accepted as true for the purposes of this motion.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor.").

Plaintiff G&G is a commercial distributor and licensor of sporting programs.  *See* Compl. ¶ 21.  Under a license agreement with Golden Boy Promotions, LLC ("the License Agreement"), plaintiff obtained the exclusive nationwide commercial distribution (closed-circuit) rights to the Gervonta Davis v. Hector Luis Garcia, Championship Fight Program,[2] including undercard or preliminary bouts (collectively referred to as "the Program"), telecast nationwide on Saturday,

---

[1] References to the page numbers generated by the Court's electronic case filing system appear as "ECF page."

[2] The text of the Complaint and various other pleadings contain a typographical error regarding the boxers involved in the main event held on January 7, 2023.  The Complaint alleges that the main event was Saul Alvarez v. Gennady Golovkin.  *See* Compl. ¶ 17.  However, the Rate Card attached to the Complaint, the investigator's affidavit, and plaintiff's affidavit described the main event as Gervonta Davis v. Hector Luis Garcia.  *See* Rate Card, Dkt. 1 at ECF page 20; Affidavit of Luis A. Onativia ("Onativia Aff."), Dkt. 20-2 at ECF pages 29-30; Affidavit of Nicolas J. Gagliardi ("Gagliardi Aff.") ¶¶ 3, 7, Dkt. 20-1.  After the Court's inquiry, plaintiff's counsel confirmed that plaintiff incorrectly referred to the wrong fighters in the Complaint and in various other submissions to the Court.  *See* Letter, Dkt. 25.  The Court considers the reference to the wrong fighters in the Complaint harmless because defendants, had they participated in this action, could have gleaned easily from the materials included with the Complaint and in the affidavits included with the second motion for default judgment, the correct names of the fighters.  Where, as here, typographical errors in the pleadings are "clear and inconsequential," courts typically disregard them.  *See, e.g., SEC v. Scott*, No. 13-CV-5113, 2015 WL 13742024, at *6 n.5 (E.D.N.Y. July 15, 2015) (overlooking a typographical error ); *Reliance Commc'ns LLC v. Retail Store Ventures, Inc.*, No. 12-CV-2067, 2013 WL 4039378, at *1 n.2 (E.D.N.Y. Aug. 7, 2013) (overlooking an incorrect entity's name used in place of the defendant's name).

January 7, 2023, at commercial establishments such as theaters, arenas, bars, clubs, lounges, and restaurants throughout New York and other geographic locales.  *See id.* ¶ 17.  Pursuant to the License Agreement, plaintiff entered into sublicensing agreements granting commercial establishments the rights to publicly exhibit the Program.  *See id.* ¶ 18.  Commercial establishments in New York could only exhibit the Program if contractually authorized by plaintiff.  *See id.* ¶ 19.  Plaintiff marketed and distributed its closed-circuit rights, contracted with various establishments throughout New York, and granted to such establishments the right to broadcast the Program in exchange for a fee.  *See id.* ¶ 20.

The transmission of the Program was electronically coded or "scrambled" and had to be decoded with electronic decoding equipment in order to be received and telecast clearly.  *See id.* ¶ 22.  The Program originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal.  *Id.*  If a commercial establishment was authorized by plaintiff to receive the Program, the establishment was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal, or the establishment's satellite or cable provider was notified to unscramble the reception of the Program for the establishment.  *See id.* ¶ 23.

Defendant Ashley Lalmansingh was identified as the owner and principal of All Thingz LLC, which owned and operated the commercial establishment doing business as All Thingz at 2741 Fulton Street, Brooklyn, New York.  *See id.* ¶¶ 9-15.  On January 7, 2023, plaintiff's investigator observed that All Thingz broadcasted the Program on three screens with approximately 75[3] people in attendance, and sold alcoholic and nonalcoholic beverages to its

---

[3] The investigator, however, estimated that there were approximately 76 people in attendance. Onativia Aff., Dkt. 20-2 at ECF page 31.

patrons.  *See id.* ¶¶ 24-25.  The commercial fee for an establishment the size of All Thingz to broadcast the Program lawfully was $600.[4]  *See* Rate Card, Dkt. 1 at ECF page 20.  Neither defendant Ashley Lalmansingh nor All Thingz paid this fee to plaintiff.  *See* Compl. ¶ 26; Gagliardi Aff. ¶ 3.

On December 12, 2023, plaintiff commenced this action alleging, *inter alia*, that defendants had unlawfully intercepted, received, and exhibited the Program in violation of 47 U.S.C. § 605(a) (Count I) and 47 U.S.C. § 553(a) (Count II).  *See id.* ¶¶ 27-43.  On January 30, 2024, defendant All Thingz was served via the New York Secretary of State.  *See* Dkt. 7.  On February 10, 2024, defendant Ashley Lalmansingh was served.  *See* Dkt. 8.  Defendants have failed to answer the Complaint or otherwise appear in the case, and on March 20, 2024, the Clerk of the Court entered defendants' default.  *See* Dkt. 12.

This Court denied without prejudice plaintiff's first motion for default judgment on several procedural grounds.  *See* Order dated July 9, 2024.  Specifically, plaintiff's initial motion failed to comply with the Servicemembers Civil Relief Act, 50 U.S.C. § 3931(b)(1) and Local Civil Rule 55.2.  *See id.*  Plaintiff has now complied with those procedural requirements.

## DISCUSSION

### I.    Default Judgment

Under Rule 55 of the Federal Rules of Civil Procedure, entering a default judgment against a defendant is a two-step process.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) ("Rule 55 provides a 'two-step process' for the entry of

---

[4] The Complaint erroneously states that the commercial fee for All Thingz to broadcast the Program would have been $1,000.  Compl. ¶ 26.  Based on the Rate Card attached to the Complaint, and plaintiff's affidavit, the commercial fee would have been $600.  *See* Rate Card, Dkt. 1 at ECF page 20; Gagliardi Aff. ¶ 8, Dkt. 20-1.

judgment against a party who fails to defend:  first, the entry of a default, and second, the entry

of a default judgment." (citation omitted)).  First, the Clerk of the Court enters the default

pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  *See*

Fed R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has

failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk

must enter the party's default.").  This first step is nondiscretionary.  *See United States v.*

*Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017).  Second, after the Clerk of the Court enters a

defendant's default, if that party fails to appear or otherwise move to set aside the default

pursuant to Rule 55(c), the plaintiff may apply to the court for a default judgment.  *See* Fed R.

Civ. P. 55(b)(2).

When evaluating a plaintiff's application for a default judgment, "a court is required to

accept all . . . factual allegations as true and draw all reasonable inferences in [plaintiff's]

favor."  *Finkel*, 577 F.3d at 84.  "Nevertheless, it remains for the court to consider whether the

unchallenged facts constitute a legitimate cause of action, since a party in default does not admit

conclusions of law."  *Labarbera v. ASTC Lab'ys Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010)

(internal quotation marks and citation omitted); *see also TAGC Mgmt., LLC v. Lehman, Lee &*

*Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district

court is required to determine whether the plaintiff's allegations establish the defendant's

liability as a matter of law." ) (internal quotation marks and citation omitted).

A default serves as the defendant's admission that the complaint's well-pleaded factual

allegations are true.  *See Mickalis Pawn Shop*, 645 F.3d at 137; *Finkel*, 577 F.3d at 84 (after

default the "court is required to accept all of the [plaintiff's] [well-pleaded] allegations as true

and draw all reasonable inferences in its favor").  A fact is not considered "well-pleaded,"

however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice . . . or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-3259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (internal quotation marks and citations omitted). Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

The Clerk of the Court noted defendants' default on March 20, 2024, after defendants failed to respond to the Complaint. *See* Dkt. 12. Since then, defendants have not appeared or moved to vacate the entry of default. "To determine whether the Clerk's entry of default was proper, the Court must first look to whether [defendant] was served properly . . . ." *J & J Sports Prods., Inc. v. Belliard*, No. 18-CV-5088, 2022 WL 1748626, at *3 (E.D.N.Y. Jan. 25, 2022), *report and recommendation adopted*, Order dated Mar. 16, 2022; *see also Mickalis Pawn Shop*, 645 F.3d at 133 ("[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant.") (brackets in original and citation omitted).

## II.   Service on All Thingz LLC

On January 30, 2024, plaintiff served All Thingz by serving a copy of the summons and Complaint on the New York Secretary of State. *See* Dkt. 7.

"Under Federal Rule of Civil Procedure 4(h), a summons properly served on a corporation . . . in a judicial district must be served either according to the law of the state where the district court is located or where service is made, *see* Fed. R. Civ. P. 4(h)(1)(A), or 'by delivering a copy of the summons and of the complaint to an officer, a managing or general

agent,' or any other agent of the entity." *Redd v. Fed. Nat'l Mortg. Ass'n (Fannie Mae),* No. 19-CV-1045, 2020 WL 1536596, at *3 (E.D.N.Y. Mar. 31, 2020) (quoting Fed. R. Civ. P. 4(h)(1)(B). The New York Secretary of State qualifies as such an agent. *See Dacas v. Duhaney*, No. 17-CV-3568, 2023 WL 6297530, at *5 (E.D.N.Y. Sept. 8, 2023), *report and recommendation adopted*, 2023 WL 6294227 (E.D.N.Y. Sept. 27, 2023). Under New York law, service may also be made upon a limited liability company by delivering the summons and complaint to New York's Secretary of State. *See* N.Y. Ltd. Liab. Co. Law § 303(a)(1) (permitting service of process by personal delivery to the secretary of state); N.Y. C.P.L.R § 311-a.

This Court finds that service upon All Thingz was proper. *See* Dkt. 7.

## III.    Service on Ashley Lalmansingh

On February 10, 2024, plaintiff served Ashley Lalmansingh in New York by affixing a copy of the summons and Complaint to the door of Ashley Lalmansingh's usual place of abode, as well as mailing a copy of the summons and Complaint to the same address in a first-class, postpaid, envelope marked "personal and confidential." *See* Dkt. 8. Plaintiff's process server confirmed Lalmansingh's address from the resident of the second-floor apartment, who confirmed that Ms. Lalmansingh resides in the first-floor apartment. *See id.*

New York law provides for "affix-and-mail service" in cases in which personal service "cannot be made with due diligence." N.Y. C.P.L.R. § 308(4). Service may be effected "by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode" and mailing a copy of the summons to the person to be served. *See id.* While the "due diligence" requirement must be "strictly observed, given the reduced likelihood that a summons served pursuant to that section will be received," *McSorley v. Spear*, 854 N.Y.S.2d

759, 760-61 (2d Dep't 2008) (collecting cases), there is no magic number of service attempts necessary to qualify as duly diligent. *See, e.g., Cnty. of Nassau v. Gallagher*, 841 N.Y.S.2d 696, 697 (2d Dep't 2007) (collecting cases). "Nonetheless, a rough standard of due diligence has emerged from the caselaw," suggesting "approximately three attempts at service, optimally on non-consecutive days." *Feaster v. NYS Dep't of Corrections*, No. 17-CV-1151, 2022 WL 220245, at *2 (W.D.N.Y. Jan. 25, 2022) (internal quotation marks and citation omitted).

Here, plaintiff attempted personal service on Ashley Lalmansingh on four separate occasions (*i.e.*, on 1/31/24, 2/2/2024, 2/3/2024, and 2/6/2024) before resorting to the "nail and mail" method. *See* Dkt. 8. This Court recommends finding that plaintiff properly served Ashley Lalmansingh in accordance with C.P.L.R. § 308(4). *See Gardner v. Lefkowitz*, 737 F. App'x 597, 598 (2d Cir. 2018) (finding sufficient three attempts at service on non-consecutive days at different times); *G & G Closed Cir. Events, LLC v. Clayton*, No. 24-CV-4191, 2025 WL 1173926, at *7 (E.D.N.Y. Apr. 23, 2025) (affixing process was proper service after four attempts at personal service); *Mister Softee, Inc. v. Diaz*, No. 19-CV-4857, 2020 WL 5665240, at *3 (E.D.N.Y. July 2, 2020) (finding nail and mail service proper after three attempts at personal service), *report and recommendation adopted*, 2020 WL 5658722 (E.D.N.Y. Sept. 22, 2020).

Thus, this Court finds that defendants were properly served, and that defendants failed to respond to plaintiff's Complaint or otherwise defend this action. Plaintiff filed affidavits confirming service of the motion for default judgment and this Court's order scheduling a hearing on the motion. *See* Dkts. 21, 23. Defendants have nonetheless failed to respond to plaintiff's motion for default judgment or otherwise appear in this action. Accordingly, this Court recommends finding that defendants' failure to answer or otherwise respond to the

Complaint constitutes an admission of the factual allegations therein, and now proceeds to consider whether those facts establish defendants' liability under the FCA.

## IV.    Liability

Plaintiff alleges violations of sections 553 and 605 of the FCA.  Section 605 "generally prohibits the unauthorized use or publication of wire or radio communications," *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1007 (2d Cir. 1993), while section 553(a) "prohibits theft of services offered over a cable system." *J & J Sports Prods., Inc. v. Ferreiras*, No. 15-CV-6546, 2018 WL 6168557, at *9 (E.D.N.Y. Nov. 20, 2018).

"The term 'radio communication,' as used in [section 605(a)], has long been understood to include satellite transmissions." *J & J Sports Prods., Inc. v. Nacipucha*, No. 17-CV-1186, 2018 WL 2709222, at *3 (E.D.N.Y. May 18, 2018), *report and recommendation adopted*, 2018 WL 2709200 (E.D.N.Y. June 5, 2018); *see also Garden City Boxing Club, Inc. v. Focused Enters., Ltd*., No. 06-CV-4874, 2007 WL 1655647, at *2 (E.D.N.Y. June 6, 2007) ("Because [plaintiff] alleges that the Event was conveyed via satellite transmission, it has properly pleaded a claim under § 605(a)."). Thus, to make out a claim under section 605(a), plaintiff must have transmitted the Program by satellite and defendant must have intercepted it without authorization.

Meanwhile, section 553(a)(1) prohibits the unauthorized interception or receipt of "any communications service offered over a cable system."  47 U.S.C. § 553(a).  "Sections 553 and 605 are not mutually exclusive, and both statutes apply when certain television programming is transmitted over both cable and satellite." *Joe Hand Promotions, Inc. v. Mohamed*, No. 20-CV-557, 2021 WL 2895637, at *4 (E.D.N.Y. July 9, 2021); *see Joe Hand Promotions, Inc. v. Sylvestre*, No. 20-CV-822, 2021 WL 810338, at *3 (E.D.N.Y. Mar. 3, 2021); *see also Cmty.*

*Television Sys. Inc. v. Caruso*, 284 F.3d 430, 435 (2d Cir. 2002).  In such cases, "damages should only be awarded pursuant to § 605(a)," which provides for a greater recovery.[5]  *Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85, 2019 WL 885930, at *2 (E.D.N.Y. Feb. 22, 2019) (internal citations omitted); *J & J Sports Prods., Inc. v. El Sonador Café Rest. Inc.*, No. 17-CV-3357, 2017 WL 6397731, at *2 (E.D.N.Y. Dec. 14, 2017) ("Plaintiff is entitled to damages under Section 605, so the Court need not address Plaintiff's other claims [under Section 553]"); *see also Sykes*, 997 F.2d at 1009 ("the court should grant [plaintiff's] request for damages under § 605(e) instead of granting the lesser damages available under § 553").

### A.    Corporate Liability

Here, plaintiff alleges that defendants intercepted its signal, which "originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal."  Compl. ¶ 22.  Defendants then displayed the Program on three screens in a commercial setting without plaintiff's permission.  *See id.* ¶¶ 24–26; Gagliardi Aff. ¶¶ 3, 7, Dkt. 20-1; Onativia Aff., Dkt. 20-2 at ECF pages 29-31.  Though plaintiff seems to be unsure of the

---

[5] Sections 553 and 605 set forth similar remedial schemes, but differ in "(1) the range of statutory damages available to an aggrieved party, and (2) the respective provisions for attorneys' fees."  *G&G Closed Cir. Events, LLC v. Pacheco*, No. 20-CV-7457, 2021 WL 4296649, at *3 (S.D.N.Y. Sept. 20, 2021*)*.  Under both sections, the aggrieved party may elect to recover either actual damages and any profits that are attributable to the violation or statutory damages.  *See* 47 U.S.C. §§ 553(c)(3)(A), 605(e)(3)(C)(i).  While section 553 provides statutory damages "in a sum of not less than *$250* or more than $10,000," *id.* § 553(c)(3)(A)(ii) (emphasis added), section 605 provides statutory damages "in a sum of not less than *$1,000* or more than $10,000," *id.* § 605(e)(3)(C)(i)(II) (emphasis added).  Further, while section 553 allows for additional damages in "an amount of not more than *$50,000*" for violations committed "willfully and for purposes of commercial advantage or private financial gain," *id.* § 553(c)(3)(B) (emphasis added), section 605 permits additional damages in "an amount of not more than *$100,000*" in cases in which the violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," *id.* § 605(e)(3)(C)(ii) (emphasis added).  With respect to attorneys' fees and costs, a court "may" direct recovery to an aggrieved party who prevails under section 553, *id.* § 553(c)(2)(C), whereas a court "shall" direct recovery in the same situation under section 605, *id.* § 605(e)(3)(B)(iii).

exact method defendants used to intercept the broadcast, *see* Gagliardi Aff. ¶¶ 9–10, "all that needs to be alleged (to state a § 605 claim) is that the communication *originated* via satellite." *Ferreiras*, 2018 WL 6168557, at *7 (emphasis in original); *see Bernal*, 2019 WL 885930, at *3 ("[A]ny one of the various technologies by which [plaintiff's] satellite broadcast could have been intercepted is sufficient to establish liability."). As plaintiff has alleged that its signal for the Program originated via satellite, *see* Compl. ¶ 22, this Court recommends finding that plaintiff has stated a claim under Section 605(a), and holding defendant All Thingz liable for the damages recommended below. *See Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 131-33 (2d Cir. 1996); *G&G Closed Cir. Events, LLC v. Sanchez Torres*, No. 20-CV-3487, 2021 WL 101200, at *2 (S.D.N.Y. Jan. 11, 2021) ("Where, as here, the intercepted program is transmitted via cable and satellite, sections 553 and 605 both apply."); *Pacheo*, 2021 WL 4296649, at *2.

## B.    Individual Liability

In addition to bringing claims against All Thingz LLC, plaintiff also sues Ashley Lalmansingh, who plaintiff alleges is the owner and principal of All Thingz LLC. *See* Compl. ¶¶ 8-15.

Individual defendants may be held liable for section 605 and 553 violations under a theory of vicarious liability or contributory liability. *See J & J Sports Prods., Inc. v. Cineus*, No. 18-CV-5109, 2021 WL 829397, at *5 (E.D.N.Y. Feb. 2, 2021), *report and recommendation adopted*, 2021 WL 826013 (E.D.N.Y. Mar. 4, 2021); *Belliard*, 2022 WL 1748626, at *5. "Contributory infringement is shown when the individual defendant authorize[d] the violations, and vicarious liability is shown when the individual defendant had a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials." *Belliard*, 2022 WL 1748626, at *5 (alterations in original, internal

quotation marks and citations omitted); *see also G&G Closed Cir. Events, LLC v. Gonzalez*, No. 20-CV-4278, 2021 WL 9822076, at *3 (E.D.N.Y. Sept. 29, 2021); *J & J Sports Prods., Inc. v. Dang*, No. 19-CV-5112, 2020 WL 6364898, at *2 (E.D.N.Y. Oct. 13, 2020), *report and recommendation adopted*, 2020 WL 6363905 (E.D.N.Y. Oct. 29, 2020).  Under either theory, to establish individual liability, "the plaintiff must allege concrete details about the [corporate officer's] role in the activity and the amount or source of revenue potentially stemming from the activity." *Innovative Sports Mgmt., Inc. v. Mejia*, No. 20-CV-2943, 2021 WL 7709510, at *4 (E.D.N.Y. Aug. 3, 2021).  "That one is an officer, director, or other principal of a corporation does not guarantee liability for a corporation's wrongdoing." *Clayton*, 2025 WL 1173926, at *11.

    In its Complaint, plaintiff does not specify under which theory it seeks to hold Ms. Lalmansingh liable.  Because the Court finds that Ms. Lalmansingh is vicariously liable, it is not necessary to consider whether she is also contributorily liable.  *See G & G Closed Cir. Events LLC v. Ramirez*, No. 21-CV-5007, 2022 WL 16755271, at *5 (E.D.N.Y. Aug. 1, 2022), *report and recommendation adopted*, 2022 WL 4596752 (E.D.N.Y. Sept. 30, 2022).

    Vicarious liability arises when the individual (1) had the right and ability to supervise the infringing activities and (2) had an obvious and direct financial interest in the infringement.  *See Clayton*, 2025 WL 1173926, at *11; *Belliard*, 2022 WL 1748626, at *5.  Allegations based solely on an individual defendant's position as an officer or principal of the establishment are insufficient to establish liability where the plaintiff fails to identify any actions the individual defendant took with respect to displaying the Event or fails to show that the defendant had an obvious and direct financial interest in the infringement.  *See Joe Hand Promotions, Inc. v. Crisis Bar LLC*, No. 21-CV-6563, 2023 WL 2969308, at *8 (E.D.N.Y. Jan. 19, 2023).  A plaintiff's

allegations must be sufficient to allow the court to infer an individual defendant's knowledge or supervision of the violations and connect the individual to the infringing activities.  *See id.*  Accordingly, courts consider whether a plaintiff has alleged that an individual defendant was present for the violation, whether she authorized or controlled it, and whether she reaped commercial benefit from it.  *See id.*; J&*J Sports Prods., Inc. v. 291 Bar & Lounge*, LLC, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009).  Where courts have imposed vicarious liability on an individual defendant, a plaintiff has shown a direct financial gain, such as through the establishment's imposition of a cover charge on the night of the broadcast, or indirect financial gain, such as if the establishment advertised the broadcast in order to increase attendance or hosted a large number of patrons, who would presumably purchase drinks during the broadcast.  *See Joe Hand Promotions, Inc. v. Eddie Jr.'s Sports Lounge, Inc.*, No. 22-CV-7100, 2024 WL 1285474, at *5 (E.D.N.Y. Mar. 6, 2024), *report and recommendation adopted*, 2024 WL 1282367 (E.D.N.Y. Mar. 25, 2024); *Ramirez*, 2022 WL 16755271, at *5 (establishment collected $10 cover charge and an investigator counted between 36 to 42 patrons); *J & J Sports Prods., Inc. v. LX Food Grocery Inc.*, No. 15-CV-6505, 2016 WL 6905946, at *3 (E.D.N.Y. Nov. 23, 2016).

Here, the Complaint alleges that Ms. Lalmansingh is the owner and principal of All Thingz LLC.  *See* Compl. ¶ 9.  Plaintiff also alleges that the actions of the employees of "All Thingz are imputable to [Ms.] Lalmansingh by virtue of her acknowledged responsibility for the operation of All Thingz."  *See id.* ¶ 12.  Further, plaintiff alleges that the "unlawful interception, receipt and publication of Plaintiff's Program . . . resulted in increased profits or financial benefit to All Thingz."  *See id.* ¶¶ 9, 14.  Plaintiff also presented evidence that Ms. Lalmansingh is listed as the registered agent of All Thingz LLC on the Department of State, Division of Corporations

website, and that the phone number listed on the All Thingz advertisements for the fight are associated with Ms. Lalmansingh.  *See* Declaration of Joseph P. Loughlin ("Loughlin Decl.") ¶ 18, Dkt. 20-2 at ECF page 3; *see also* Dkt. 20-2 at ECF pages 33, 38-43.  In addition, the investigator who visited All Thingz on the night of the Program averred that, on the evening of the event, "Ashley," who informed him of more upcoming events at All Thingz, shared her Instagram page with the username: "@bookallthingz."  *See* Onativia Aff., Dkt. 20-2 at ECF page 30.  All Thingz also advertised its broadcast of the Program via posters on several event marketing websites, including EventBrite and HuntHalloween, as well as through Instagram Stories and posts on an Instagram account with the username "@bookallthingz."[6]  *See* Dkt. 20-2 at ECF pages 39-49.  On the evening of the Program, the investigator paid a $20 cover charge, ordered three drinks, and counted seventy-six patrons at the time of the main event, while he estimated the capacity in the establishment to be around fifty to sixty people.  *See* Onativia Aff., Dkt. 20-2 at ECF pages 29-31.  The advertisements of the Program and the increased patronage in the hours leading up to the Program bolster the inference that the broadcast of the Program increased revenue for All Thingz.  *See Ramirez*, 2022 WL 16755271, at *5 ("[A]dvertising bolsters the inference that broadcasting would increase patronage and, thus, revenue."); *see also J & J Sports Prod., Inc. v. McAdam*, No. 14-CV-5461, 2015 WL 8483361, at *2-3 (E.D.N.Y. Dec. 9, 2015) (finding defendant vicariously liable where restaurant implemented a cover charge and was at or over capacity).

---

[6] Instagram posts included:  "Cover $20 / Ladies Free" and entry was free with the purchase of "bottles and hookah."  Dkt. 20-2 at ECF page 44.  Purchases could be made using a link in the Instagram bio associated with the account "@bookallthingz."  On Eventbrite, tickets for the Program began at $54.98 and entry was free with the purchase of "bottles and hookah."  *See* Dkt. 20-2 at ECF page 49.

Taken together, the evidence plaintiff provided is sufficient to allow this Court to find that Ms. Lalmansingh had (1) the right and ability to supervise the infringement on the evening of the Program and (2) had an obvious and direct financial interest in the infringement. The Court, thus, holds Ms. Lalmansingh vicariously liable for the violation of 47 U.S.C. § 605(a). *See Clayton*, 2025 WL 1173926, at *12 (finding similar allegations sufficient for vicarious liability under Section 605); *Mejia*, 2021 WL 7709510, at *4 ("[C]oncrete evidence of cover charges paid by patrons to enter the establishment . . . or the establishment being at or over the maximum capacity tip the scale in favor of vicarious liability."); *Joe Hand Promotions, Inc. v. Beer Closet, Inc.*, No. 17-CV-3735, 2018 WL 4138938, at *2, *5 (E.D.N.Y. July 27, 2018) (finding individual defendants vicariously liable where they advertised their broadcast of the infringing content, one television broadcast the event, and 35 patrons were present at the time), *report and recommendation adopted*, 2018 WL 4119548 (E.D.N.Y. Aug. 29, 2018).

## V.    Damages

Unlike those allegations concerning liability, allegations relating to damages are not deemed admitted upon default. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Rather, damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *See Greyhound Exhibitgroup*, 973 F.2d at 158. However, "these steps are not necessary as long as [the Court] ensure[s] that there was a basis for the damages specified in the default judgment." *Joe Hand Promotions, Inc. v. Levin*, No. 18-CV-9389, 2019 WL 3050852, at *3 (S.D.N.Y. July 12, 2019) (alterations in original) (internal quotation marks and citation

omitted).  A court may make this determination upon a review of detailed affidavits and documentary evidence.  *See Fustok v. ContiCommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989).

Section 605 provides that a plaintiff may recover statutory damages "of not less than $1,000 or more than $10,000 . . . for each violation."  47 U.S.C. § 605(e)(3)(C)(i)(II).  In addition to statutory damages, a plaintiff may recover enhanced damages in "an amount of not more than $100,000 for each violation" where "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."  *Id*. § 605(e)(3)(C)(ii).  "Courts have interpreted the showing of an event on a single night as one violation for the purposes of statutory and enhanced damages."  *Bernal*, 2019 WL 885930, at *3 (citation omitted).

Plaintiff seeks $1,800 in statutory damages and $5,400 in enhanced damages, or three times the requested statutory damages, for a single violation of the statute.  *See* Loughlin Decl. ¶ 8.

### A.    Statutory Damages

While the amount of damages assessed pursuant to a violation of Section 605 rests within the sound discretion of the Court, courts typically utilize either the "flat-fee" or the "per-person" method to determine statutory damages and then award the greater of the two.  *Clayton*, 2025 WL 1173926, at *13 (quoting *Time Warner Cable of New York City v. Taco Rapido Rest*., 988 F. Supp. 107, 111 (E.D.N.Y. 1997)); *J & J Sports Prods., Inc. v. Hot Shotz Sports Bar Inc.*, No. 17-CV-4170, 2018 WL 5020175, at *7 (E.D.N.Y. July 13, 2018) (collecting cases), *report and recommendation adopted*, 2018 WL 4627666 (E.D.N.Y. Sept. 27, 2018).  The flat-fee method awards "the amount that the establishment would have paid to license the event and broadcast it

legally." *Bernal*, 2019 WL 885930, at *4; *see Clayton*, 2025 WL 1173926, at *13.  The per-person method awards a rate calculated by "multipl[ying] the number of patrons in the establishment by the fee that an average customer would pay to view the fight at home on a pay-per-view channel." *Bernal*, 2019 WL 885930, at *4; *see Clayton*, 2025 WL 1173926, at *14.

Here, plaintiff does not include any evidence as to the residential fee in its submissions, preventing the Court from calculating the per-person amount, *see id.*, but has submitted an exhibit showing the rates charged to commercial customers to broadcast the event legally.  *See* Rate Card, Dkt. 20-1 at ECF page 18; *see also* Gagliardi Aff. ¶ 8.  The Rate Card indicated that the license to lawfully display the Program in an establishment with a capacity under 100 patrons would have cost defendants $600.  *See* Rate Card; Gagliardi Aff. ¶ 8.  Thus, plaintiff's request for $1,800 in statutory damages amounts to three times what defendant would have paid as a licensing fee.

Plaintiff argues that awarding only the flat-fee would "undervalue[] the Program and undercompensates Plaintiff," as well as conflate actual and statutory damages so as to negate the purpose of having both actual and statutory damages.  *See* Pl.'s Mem., Dkt. 20-3 at ECF pages 11-12 (citing *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 443 (S.D.N.Y. 2001).  However, plaintiff fails to cite any authority in this Circuit in support of trebling the base statutory award.  *See id.* at 11 (quoting *J & J Sports Productions Inc. v. Ramirez*, No. 17-CV-6926, 2018 WL 1961107, at *2 (S.D.N.Y. Apr. 9, 2018) (declining to award plaintiff three times the commercial licensing fee).

This Court finds no reason to award statutory damages equal to three times the licensing fee.  *See Clayton*, 2025 WL 1173926, at *14; *Ramirez*, 2022 WL 16755271, at *7; *see also G & G Closed Cir. Events, LLC v. Alba*, No. 22-CV-3248, 2023 WL 5646136, at *8 (E.D.N.Y. Aug.

9, 2023), *report and recommendation adopted*, 2023 WL 5625448 (E.D.N.Y. Aug. 31, 2023) (rejecting out-of-circuit cases cited by plaintiff).  "When the defendant has engaged in willful misconduct, the same deterrent effect can be achieved by enhancing the statutory damages."  *See Ramirez*, 2022 WL 16755271, at *7.

Accordingly, because "courts in the Second Circuit generally award statutory damages equivalent to the sublicensing fee," *Alba*, 2023 WL 5646136, at *8, this Court would recommend awarding plaintiff $600 in statutory damages.  However, since damages in the amount of the license fee would fail to exceed the statutory minimum of $1,000 under 47 U.S.C. § 605(e)(3)(C)(ii), this Court recommends awarding **$1,200** or double the licensing fee.  *See Clayton*, 2025 WL 1173926, at *14 (awarding double the $600 licensing fee or $1,200); *Sylvestre*, 2021 WL 810338, at *3 (noting sufficiency of statutory award that was greater than the minimum under Section 605); *Ramirez*, 2018 WL 1961107, at *2 (awarding double licensing fee).

## B.    Enhanced Damages

Plaintiff also is entitled to enhanced damages given defendants' willful violation of the statute.  Willfulness is generally "presumed in cases arising under § 605 where the defendant defaults."  *Bernal*, 2019 WL 885930, at *5; *see Crisis Bar*, 2023 WL 2969308, at *10; *Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously nor do television sets connect themselves to cable distribution systems.").  In calculating enhanced damages, "[c]ourts in this Circuit typically award [] a multiple of the statutory damages award."  *Hot Shotz*, 2018 WL 5020175, at *9 (collecting cases).  A court's decision to award an amount equal to, double, or triple the statutory damages depends on the presence of factors such as "whether there is evidence of (i) repeated

violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *Id.*; *see Crisis Bar*, 2023 WL 2969308, at *11.  The presence of at least one of these factors can support an award in an amount of three times the statutory damages award, particularly when defendants' unlawful activity attracts a large group of patrons.  *See G&G Closed Circuit Events, LLC v. Hussain*, No. 20-CV-4280, 2021 WL 6424602, at *5 (E.D.N.Y Oct. 13, 2021), *report and recommendation adopted as modified*, 2021 WL 6112514 (E.D.N.Y. Dec. 27, 2021).

Here, plaintiff does not allege repeated violations by All Thingz or the extent of plaintiff's actual damages.  Plaintiff does show that All Thingz advertised the event, that it collected a $20 cover charge from patrons, displayed the Program on three screens to approximately 76 patrons and sold alcoholic and non-alcoholic drinks—resulting in unlawful monetary gains.  Accordingly, this court recommends an enhanced damages award of three times the statutory damages award or **$3,600** ($1,200 x 3 = $3,600).  *See J & J Sports Prods., Inc. v. El Trio Corp.*, No. 19-CV-5220, 2024 WL 4132751, at *6 (E.D.N.Y. Aug. 20, 2024), *report and recommendation adopted*, 2024 WL 4132419 (E.D.N.Y. Sept. 9, 2024); *J & J Sports Prods., Inc. v, Leon*, No. 19-CV-10084, 2022 WL 6995616, at *3 (S.D.N.Y. Oct. 12, 2022); *Hussain*, 2021 WL 6424602, at *5; *Joe Hand Promotions, Inc. v. Batista*, No. 20-CV-6460, 2021 WL 3855315, at *9 (S.D.N.Y. July 23, 2021), *report and recommendation adopted*, 2021 WL 3855311 (S.D.N.Y. Aug. 27, 2021).

## VI.    Attorneys' Fees and Costs

Section 605 of the FCA provides that a court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  47 U.S.C.

§ 605(e)(3)(B)(iii); *see Sykes*, 997 F.2d at 1009.  The court has discretion to determine the

amount of reasonable attorneys' fees.  *See Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-

6476, 2020 WL 5519200, at *6 (E.D.N.Y. Aug. 27, 2020), *report & recommendation adopted*,

2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

To determine whether attorneys' fees are reasonable, courts consider both the hourly rate

and number of hours worked.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "[T]he

Supreme Court and Second Circuit have held that 'the lodestar – the product of a reasonable

hourly rate and the reasonable number of hours required by the case – creates a presumptively

reasonable fee.'"  *Garcia-Severino v. TDL Restoration, Inc.*, No. 18-CV-11401, 2020 WL

7239678, at *1 (S.D.N.Y. Dec. 9, 2020) (quoting *Millea v. Metro-North R.R.*, 658 F.3d 154, 166

(2d Cir. 2011)).  This presumptively reasonable fee or lodestar is essentially "'what a reasonable

paying client would be willing to pay,' given that such party wishes 'to spend the minimum

necessary to litigate the case effectively.'"  *Simmons v. NYC Transit Auth.*, 575 F.3d 170, 174-75

(2d Cir. 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany &

Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008)).  In particular, when assessing

an attorney's requested hourly rate, courts typically consider other rates awarded in the district

where the reviewing court sits.  *See Simmons*, 575 F.3d at 174-75; *Arbor Hill*, 522 F.3d at 191.

Additionally, the "Second Circuit has [] provided some guidance on what factors courts

should consider in assessing what constitutes a 'presumptively reasonable rate.'"  *Eddie Jr.'s

Sports Lounge*, 2024 WL 1285474, at *10 (quoting *Arbor Hill*, 522 F.3d at 187 n.3).  These

factors include the following:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3)
> the level of skill required to perform the legal service properly; (4) the preclusion
> of employment by the attorney due to acceptance of the case; (5) the attorney's
> customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time

limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.*  Additionally, a request for attorneys' fees must be supported by contemporaneous time records that show the date, the hours expended, and the nature of the work done.  *Garden City Boxing Club, Inc. v. Taqueria La Mixteca, Inc.*, No. 07-CV-4479, 2008 WL 4107130, at *4 (E.D.N.Y. Sept. 4, 2008) (quoting *New York Ass'n for Retarded Children, Inc, v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983)).

Here, plaintiff seeks to recover attorneys' fees in the amount of $3,867.50 and costs in the amount of $1,333.80.  *See* Pl.'s Mem. in Support of Attorneys' Fees and Costs at ECF page 3, Dkt. 17.[7]  Counsel, who has been practicing for more than thirty years, states that he worked a total of 11.05 hours at a rate of $350 per hour.[8]  Attorney Fee Decl. ¶¶ 3, 5, Dkt. 17-1.  Counsel has submitted contemporaneous billing records, including the date, a description of the task performed, and the hours expended.  *See* Dkt. 17-1.

Having reviewed the documents submitted, this Court finds both the number of hours expended and the hourly rate to be reasonable.  First, the Court concludes that the rate requested

---

[7] After filing the first motion for default judgment, the Court ordered plaintiff to file its fee petition.  *See* Order dated 6/11/2024.  The Court subsequently denied plaintiff's first motion for default judgment due to procedural deficiencies.  After filing its second motion for default judgment, plaintiff did not seek to amend or update its previously-filed fee petition.  For purposes of awarding attorneys' fees, the Court considers the fee petition filed in connection with plaintiff's first motion for default judgment as the operative fee petition.  Even if plaintiff had moved to amend its previously-filed fee petition in connection with the second motion for default judgment, the Court likely would not have awarded additional fees in connection with the second motion because it simply corrected the procedural deficiencies with the first motion for default judgment.

[8] Without explanation, counsel's billing records reflect three hours billed at a rate of $250 per hour.  *See* Billing Records, Dkt. 17-1 at ECF page 5.

of $350 per hour is reasonable in this case for an attorney of Mr. Loughlin's experience.  *See, e.g., Eddie*, 2024 WL 1285474, at *10 (reducing counsel's hourly rate to $350); *Benitez*, 2020 WL 5519200, at *7; *Innovative Sports Mgmt., Inc. v. Acevedo*, No. 19-CV-1690, 2020 WL 5134423, at *8 (E.D.N.Y. June 4, 2020), *report and recommendation adopted*, 2020 WL 6063250 (E.D.N.Y. Oct. 14, 2020).

Further, while at the higher end of the range of reasonableness, the Court finds that the 11.05 hours spent by counsel on this relatively simple matter is reasonable.  *See Acevedo*, 2020 WL 5134423, at *8 (finding 12.6 hours reasonable).  Applying an hourly rate of $350 per hour results in a lodestar of $3,867.50, as requested.  Accordingly, the Court recommends awarding plaintiff **$3,867.50** in attorneys' fees.

In addition, plaintiff seeks costs in the amount of $1,333.80, including $720 in investigative expenses, $400 for the court filing fee, and $213.80 in process server fees.  *See* Billing Records, Dkt. 17-1 at ECF pages 5-6.  The Court recommends awarding plaintiff the court filing fee ($400) and process server fees ($213.80), as such costs are routinely recoverable.  However, the Court recommends denying plaintiff's request for investigative fees.  "Although the Court may direct that investigative costs be awarded, it is not obliged to."  *G&G Closed Cir. Events, LLC v. Vasquez*, No. 20-CV-2030, 2020 WL 8167387, at *5 (E.D.N.Y. Dec. 27, 2020) (citation omitted), *report and recommendation adopted*, No. 20-CV-2030, 2021 WL 135721 (E.D.N.Y. Jan. 14, 2021).  Courts in this District have regularly required that parties "requesting investigative costs must supply contemporaneous time records to substantiate the fee request."  *Id.* (citation omitted); *see G & G Closed Cir. Events LLC v. Ramirez*, No. 21-CV-5007, 2023 WL 5979124, at *3 (E.D.N.Y. Aug. 11, 2023).  Here, plaintiff submitted an invoice showing the investigator's total charge without identifying the investigator's hourly rate or the total time

spent investigating this action.  The Court finds the information set forth in the invoice insufficient to warrant awarding plaintiff investigative fees.

Accordingly, the Court recommends awarding costs in the amount of **$613.80 (**$400 + $213.80 = $613.80).

## CONCLUSION

For the reasons set forth above, this Court respectfully recommends that the District Court grant plaintiff's motion for default judgment in the amount of **$9,281.30**, consisting of $1,200 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), $3,600 in enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), $3,867.50 in attorneys' fees, and $613.80 in costs.

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to defendants at their last known addresses and to file proof of service on ECF by **August 7, 2025**.  Any objections to the recommendations made in this Report must be filed with the Honorable Ann M. Donnelly within 14 days after the filing of this Report and Recommendation and, in any event, on or before **August 18, 2025**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam) (discussing waiver under the former ten-day limit).

The Clerk is requested to enter this Report and Recommendation into the ECF system.

**SO ORDERED**

Dated: Brooklyn, New York
       August 4, 2025

                                    s/ James R. Cho
                                    James R. Cho
                                    United States Magistrate Judge